Brockenbrough, J.
The note in this case was signed in blank by the maker James Douglass, and then indorsed by William I. Douglass, Thomas M. Douglass, Valentine Head, and Thomas Draffen. It was so made and indorsed for the accommodation of Draffen, and delivered to him to enable him to raise money upon. According to well established principles, this accommodation note became available when it was issued or negotiated to some real holder for valuable consideration. Whitworth v. Adams, 5 Rand. 415. It was filled up by Draffen, as he had a right to do, with a sum certain payable in sixty days. The question is, when was it issued to the real holder for valuable consideration P The bill of exceptions gives the answer. After being filled up by Draffen, it was delivered by him to the plaintiffs Scott SfFry, who received it for the purpose of being deposited in ■ bank for their benefit, to take up a note which they had indorsed for Draffen, which was then due and unpaid, and after it had been so indorsed and delivered, and accepted for six hours, and had, been offered to the banlc for discount, the plaintiffs altered the word sixty into thirty, so as to make *45 it payable in thirty instead of sixty days, with the assent of Draffen, but in the absence and without the knowledge of the maker and of each and all of the other indorsers. For what purpose was it received by Scott 8f Fry from Draffen? For the purpose of taking up a noto which they had indorsed for Draffen, and which was then due and unpaid. How could they take up that note ? Only by cashing the.Douglass note; and the usual mode of doing this is by applying to the bank to discount it. Accordingly they offered it to the bank for discount. The bill of exceptions does not say that the bank refused to discount it, and that their objection was that it had to run for sixty days; but this is the natural inference, because, within a few hours after they received it, the alteration as to time took place. The delivery and acceptance of this accommodation note, then, for the purpose of cashing it to take up another note then due, was not such an issuing of it as to make it an available security; it was not available to Scott fy Fry until it was discounted, for they took it to get the money in hand. I admit that if Scott SfFry had been indifferent about receiving the proceeds of this Douglass note at that time, and had been willing to wait for the money till the expiration of the sixty days, and the note had been delivered by Draffen, and received by Scott fy Fry, with that understanding, then it would be considered as issued to a real holder for a valuable consideration, at the moment of such delivery, and would be at that instant an available security in the hands of Scott fy Fry, unalterable but with the consent of all the parties to it. Bayley on Bills, pp. 58. 59. Master v. Miller, 4 T. R. 320. But such was not the delivery and acceptance of this note. The delivery and acceptance of it as a sixty day note was not intended to be complete till the money should be raised upon it. Whether the plaintiffs were able to cash it after it was made a thirty day note, or were willing to wait for the money till the expiration *46 of the thirty days, does not appear, nor is it important, because, if they accepted it with that agreement, the note was complete and thenceforward unalterable.
The note having been signed in blank by the maker and indorsed in the same way, and delivered to Draffen to raise money on for his own use, he had a right to fill up the note with the sum required, the time of payment &c. and the maker and other indorsers were bound by it. Bayley on Bills, p. 91. This authority continued till the note was issued so as to make it available; till that period he had a right to alter what he had previously written, for the alteration then is but the filling up the blank: when the note is issued as aforesaid, or negotiated, the authority to fill up or to alter is at an end.
I think there was no error in the court’s refusing to give the instruction asked for, and I am for affirming the judgment.
Cabell, J.
The principles of law which are to govern this case are too plain and well settled to admit of doubt. There may, however, be a difference of opinion as to the facts.
My opinion is that the delivery of the note mentioned in the bill of exceptions, to Scott SfFry, for the purpose of getting it discounted at the bank of Virginia, and of applying the proceeds to the payment of another note of Draffen on which Scott Sf Fry were indorsers, was intended merely to give them the power to present it to the bank for discount. I regard it as a mere effort or experiment of Draffen, through Scott Sf Fry, to get money on the note from the bank; and I think that it had the -same effect, and the same only, as if the note had been offered to the bank for discount, by Draffen without the intervention of Scott 8f Fry. And it is perfectly clear that if the note had been thus offered, it *47 would not have precluded Draffen from making in the note, the alteration that was made.
I am therefore of opinion to affirm the judgment.
Brooke, J.
After what has been said by the judges who have preceded me, I shall make very few remarks on this case. The turning point in the case seems to me to be the question what was the condition of the note after it was delivered to Scott SfFry to be deposited in bank for discount; was that delivery an issuing and negotiation of the note ? If it was, surely all authority to change it in any respect was at an end. But 1 think the facts in the bill of exceptions do not warrant this conclusion. It is to be recollected that the note was a blank note when it was delivered to Draffen to raise money on ; and when he delivered it to Scott Sf Fry to be discounted, it appears by the facts in the bill of exceptions that he did not part with his power over it; on the contrary it appears that the plaintiffs did not treat it as their property, but, with leave of Draffen, after it had been offered by them at bank, changed the word sixty for the word thirty, acting in that respect as the agents of Draffen. The words in the bill of exceptions, as regards this point, are, “After it had been so indorsed and delivered, and accepted for six hours, and had been offered to the bank for discount, the plaintiffs altered and changed the word sixty into the word thirty, so as to alter the time of payment in said note, with the assent of the said Draffen.” He had, under his power to fill up a blank note delivered to him to raise money on, before he delivered it to the plaintiffs, filled up the note with the word sixty, which is not objected to; having done so, and delivered it to the plaintiffs, not as payment to them or as a security for them against their indorsement for him on a former note, but for the purpose of raising money by having it discounted at bank. Had it been discounted, that the money would have *48 been applied to the payment of Draffen's note indorsed by the plaintiffs, I have no doubt; but until that was done, it was the property of Draffen and not of the plaintiffs, otherwise they would not have asked Draffen's assent to the alteration of the word sixty to thirty. I confess I had an objection to this alteration, which was not noticed by the bar: it was, that as sixty days is the usual period on which notes are discounted at bank, it ought to be presumed that the drawer and indorsers, when they signed a blank' note, expected that it would be so filled up. But on the best reflection, I think the objection too narrow. When a person signs a blank note, and it is delivered to another to raise money, he ■commits himself fully to the discretion of that other, and he may, in filling the blank, do any thing that the maker might do to effect that object; and if one or the other must suffer when the note gets into the hands of one for value, he who trusted most must suffer, and not one who paid value for it. On the whole, I think the judgment should be affirmed.
Tucker, P.
The promissory note in this case was signed by James Douglass in blank, and so delivered by him to Thomas Draffen for the purpose of raising money for said Draffen, and he filled it up, making it payable in sixty days after date, and delivered it to the plaintiffs, who received it for the purpose of being deposited in bank for their benefit, to take up a note which they had indorsed for Draffen. After it had been indorsed and delivered, and accepted for six hours, and had been offered for discount, the plaintiffs, with Draffen's consent, altered the word sixty into thirty. This alteration, it is contended, avoided the note.
There can be no doubt at this day that the signing or writing a person’s name on a blank paper, and delivering it to another to be filled up as a negotiable instrument, gives the party to whom it is delivered authority to *49 pledge the signer s credit to any amount, by a negotiaÍ , ° , J , J , . ble instrument to be drawn upon the paper, and constilutes him as completely maker or drawer as if he had signed the paper in its perfect form. Russell v. Langstaffe, Doug. 496. Collis v. Emmett, 1 H. Black. 313. About this matter there seems to be no difference of opinion. Nor is it denied that if a complete bill or note be altered in a material point after negotiation (until which it is but blank paper) its validity is destroyed. See Starkie on Evid. part 4. p. 294. And it is moreover clear, on the other hand, that an accommodation bill is not issued so as to be incapable of alteration, until it comes into the hands of one entitled to treat it as an available security. Downes v. Richardson, 5 Barn. & Ald. 674. This then is the real point of controversy here, for the alteration was clearly material in accelerating the day of payment.
Now I think it is very clear that this note, when received by Scott dp Fry for the purpose of being discounted in bank for their benefit, to retire a note previously indorsed by them for Draffen, did come to the hands of parties entitled to treat it as an available security. It was delivered to them for their benefit, and for the valuable consideration of relieving them from responsibility. Such delivery for valuable consideration passed to them a complete property in the note. It was a property which could not be reclaimed, from the moment of delivery, either by Draffen or Douglass. It was delivered, indeed, for the purpose of being discounted at bank for their benefit; but the discounting at the bank of Virginia was but a mode; it was an accident, as the logicians have it, not the essence of the transaction; and accordingly we find from the protest in the record, it was at last discounted by the Farmers bank with the indorsement of Scott SpFry upon it. The essence of the transaction was the undertaking of the drawer and indorsers to be responsible for the amount inserted in the *50 note, and whether the bank discounted the note or not, Scott Sf Frxj were certainly not bound to return it, but might have sued upon it as holders, upon its nonpayment at the bank according to its tenor. Having thus complete control and ownership of the note, and all power over it on the part of Douglass being gone, the contract was complete, and the note could not be altered without the assent of all the parties to it. The alteration then was fatal to the instrument.
I think the judgment should be reversed, and a new-trial awarded.
Judgment affirmed.